UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| SHAWN WILLIAMS, | ) |
|       Plaintiff, | ) |
| v. | ) No. 2:20-cv-00531-JPH-MKK |
| C. NICHOLSON, | ) |
| C. HOLCOMB, | ) |
|       Defendants. | ) |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Shawn Williams, an Indiana Department of Correction (IDOC) inmate, filed this civil rights action under 42 U.S.C. § 1983, based on an incident that occurred on August 14, 2019, at Wabash Valley Correctional Facility. Dkt. 15 (screening order of amended complaint). Mr. Williams alleges that Sgt. Holcomb and Lt. Nicholson violated his Eighth Amendment rights when he was sprayed with a chemical agent multiple times without verbal warning or orders. *Id.* He also alleges that Sgt. Holcomb acted in retaliation in violation of his First Amendment rights because Mr. Williams filed a previous grievance against custody staff. *Id.*

The defendants have filed a motion for summary judgment. Dkt. [113]. For the reasons below, that motion is **GRANTED in part and DENIED in part**.

**I. Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts,

and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Cmty. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (noting that a court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248. "Material facts" are those that might affect the outcome of the suit. *Id.*

"At summary judgment a party 'must go beyond the pleadings and support its contentions with proper documentary evidence.'" *Nelson v. Stevens*, 861 F. App'x 667, 670 (7th Cir. 2021) (quoting *Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 972 (7th Cir. 2020) and (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 322-23). Additionally, "[a] party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." *See* S.D. Ind. L.R. 56-1.

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

Further, "where a reliable videotape clearly captures an event in dispute and blatantly contradicts one party's version of the event so that no reasonable jury could credit that party's story, a court should not adopt that party's version of the facts for the purpose of ruling on a motion for summary judgment." *McCottrell v. White*, 933 F.3d 651, 661 (7th Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)). In this case, the Court had the benefit of reviewing *in camera* a video of the incident at issue. *See* dkt. 116 (notice of manual filing of video).[1]

## II. Material Facts

---

[1] Mr. Williams "questions the authenticity" of the video because he argues he cannot "be certain if such video evidence presented by defendants has been 'digitally manipulated' or 'enhanced' by defendants." Dkt. 121 at 16. Mr. Williams has designated no evidence showing or suggesting that the video was altered or that defendants' counsel has submitted a different version to the Court from what he received in discovery, *see* dkt. 55 at 1.

3

The following statement of facts has been evaluated under the standard set forth above and is undisputed unless otherwise noted.

### A. The Parties

At all times relevant to his allegations, Mr. Williams was in IDOC custody at Wabash Valley Correctional Facility, and Sgt. Holcomb and Lt Nicholson were employed as IDOC officers at the facility. Dkt. 17, ¶ 1 (defendant's answer). Lt. Nicholson was the zone supervisor on Mr. Williams' restrictive housing unit. *See* dkt. 113-2 (Lt. Nicholson's response to Williams' grievance about force incident).

### B. Events Prior to the Use of Force Incident

On August 6, 2019, Mr. Williams filed an offender grievance, logged as #108635:

> In accordance with Policy #01-05-101, a part of the training of staff are to hold accountability and policy compliance. This unit being a restrictive housing unit in accordance with Policy #02-04-101 Staff have a responsibility to perform proper observation of inmates housed in restrictive housing units. Staff have failed to fulfill their duties in compliance with Policy #02-04-101. Staff are not doing 30 minute security checks in compliance with IDOC Policy #02-04-101, therefore have also failed to comply with proper training in accordance with IDOC Policy #01-05-101, not taking their duties serious, a sign of job burn out, not taking the safety and security of inmates serious. I ask that staff begin to hold themselves accountable in compliance with Policy #02-04-101 and #01-05-101 without fear of retaliation.

Dkt. 113-1 (cleaned up). The grievance was received by the facility grievance specialist on August 13, 2019, and Lt. Nicholson's name was written at the top of the grievance form. *Id.* Mr. Williams attests that on August 13, 2019, Lt. Nicholson spoke with him about grievance #108635 and told him that "he would hate to see something happen to [Williams] because [he] pissed off his staff," and

4

said that Williams "shouldn't put certain things on paper, and wished [him] good luck." Dkt. 120, ¶ 4 (Williams' declaration).

### C. August 14, 2019, Use of Force Incident

The Court summarizes the relevant incident based upon its review of the video—which does not contain audio—and Mr. Williams' declaration about the events.

On August 14, 2019, Mr. Williams returned to his cell and noticed his television was missing, and he asked to speak to Lt. Nicholson about the issue. *Id.*, ¶ 5. An officer then came to his cell door with a pink confiscation slip "saying she took [his television]" because Mr. Williams had been found guilty of a conduct report. *Id.*, ¶ 6. Mr. Williams again asked to speak to Lt. Nicholson, and the officer said "okay," and then walked away. *Id.* Mr. Williams's cuff port was open at the beginning of the video and remained open after the officer walked away from his cell door. Dkt. 116.

On the video, Mr. Williams's hand can be seen briefly outside the cuff port. *Id.* (approx. timestamp 1:08). Sgt. Holcomb and an unidentified officer are standing outside the cell next to Mr. Williams's cell speaking with a neighboring inmate. *Id.* (approx. timestamp 1:52-2:35). Mr. Williams then puts his hand back through the cuff port, and the other officer is positioned to look toward Mr. Williams' cell. *Id.* At that point, Mr. Williams has an object in his hand from which he sprays an unknown substance that hits the wall across from his cell. *Id.* (approx. timestamp 2:35). The officers don't react. *Id.* Mr. Williams continues to hold this object with his finger in a trigger position while Sgt. Holcomb and

5

the other officer continue to talk to the other inmate for several minutes. *Id.* After the other inmate has briefly been removed and returned to the neighboring cell, Sgt. Holcomb returns to the range with a can of OC spray and a small hose attached to it. *Id.* (approx. timestamp 7:04). At this time, Mr. Williams briefly removes his hand, but then sticks his full arm through the cuff port seconds later and positions his elbow on the open cuff port door. *Id.* (approx. timestamp 7:11).

Then, Sgt. Holcomb walks down range armed with the OC spray and attached hose, but before administering the OC spray, abruptly tries to physically close the cuff port. *Id.* (approx. timestamp 7:20). After being unable to close the port because of Mr. Williams's arm, Sgt. Holcomb begins to thread the hose into the cuff port and then administers the OC spray with his back turned to the camera, shifts position to face the camera view and pauses with his body still positioned against the cuff port, and then administers additional OC spray. *Id.* (approx. timestamp 7:31-7:57). Mr. Williams's arm remains in the cuff port, preventing Sgt. Holcomb from closing it, and two additional officers (non-parties) assist Sgt. Holcomb. *Id.* (approx. timestamp 8:00-9:50). The video shows that Mr. Williams keeps his arm in the cuff port for approximately two minutes. *Id.* Eventually, Sgt. Holcomb and the two additional officers secure the cuff port without further incident. *Id.*

After the incident, another officer arrives and appears to talk to Mr. Williams and read from a clipboard, presumably the information provided to an inmate after a chemical agent is administered, and this officer and/or other

6

facility staff stay outside Mr. Williams's cell nearly up until the time the nurse arrives. *Id.* (beginning at approx. timestamp 11:29). A nurse arrives in less than ten minutes after the incident, appears to speak with Mr. Williams, and then leaves his cell door without further incident. *Id.* (approx. timestamp 17:27).

In his declaration, Mr. Williams states that Sgt. Holcomb "just went crazy [and] without saying a word closed [his] arm in the cuff port and sprayed me like five times." Dkt. 120, ¶ 7. After Sgt. Holcomb sprayed him, he attests that he "was blinded and couldn't breathe," his "whole body was burning" and he "heard a voice call [him] 'bitch.'" *Id.*, ¶8. Then another voice told him "I ain't talking to L.T." and told him to "file a grievance." *Id.* He also states that he "was not given orders and did not refuse any orders." *Id.*, ¶ 9.[2] Mr. Williams designates another inmate's witness testimony that Sgt. Holcomb sprayed Mr. Williams "numerous times," multiple officers slammed his hand in the cuff port, and Sgt. Holcomb "gave offender Williams no orders before he sprayed." Dkt. 119-1 at 3-4 (Titus Aron-El affidavit).

**D. Mr. Williams' Grievance After the Incident**

The day of the incident, Mr. Williams submitted a request for interview to Lt. Nicholson that stated: "I know you are aware of the situation on 8/14/19. That was not protocol at all. I asked to speak with you and was not offered the opportunity. I need to speak with you. Idles time is the Devil's playground and I'm ready to go. The last conversation we had is dead . . . ." *Id.* at 10 (Aug. 14,

---

[2] Mr. Williams also says that a false conduct report trying to justify Sgt. Holcomb's use of force was later dismissed. That conduct report alleged that Sgt. Holcomb ordered Offender Williams to move his arm, but Mr. Williams refused.

7

2019 request for interview). Lt. Nicholson responded two days later by writing on the action item line that he "was already on it." *Id.*[3]

### III. Discussion

The defendants argue that summary judgment is appropriate because the video shows that Sgt. Holcomb's use of force was reasonable and because Mr. Williams has presented no admissible evidence to support an Eighth Amendment claim against Lt. Nicholson or a First Amendment retaliation claim against Sgt. Holcomb. Dkt. 114 at 5.

**A. Eighth Amendment Standard**

The "unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citation and quotation marks omitted). "[T]he question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of

---

[3] Lt. Nicholson responded to the grievance on August 23, 2019:

> I reviewed the grievance of Offender Williams, Shawn #178128. The complaint is about possible excessive force on 08/14/19. On 08/14/19 Offender Williams refused orders to remove his hand from the cuff report. Staff attempted to secure the cuff port, but Williams still refused to remove his hand. Chemical agent was applied and the cuff port was secured. Williams refused a decontamination shower and to have his cell cleaned. In closing, Williams cannot refuse orders to remove his hand from the cuff port. This incident was documented and [he] was seen by medical.

Dkt. 113-2 at 1. The Court considers this response only to the extent it establishes that Lt. Nicholson responded to Mr. Williams' grievance and not to the extent that it establishes any personal knowledge that Lt. Nicholson had of the event as he undisputedly was not present.

8

causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992); *see Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam).

To evaluate this question, the Court weighs "several factors, such as 'the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to an inmate.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 619 (7th Cir. 2022). "A *de minimus* application of force is insufficient to support an Eighth Amendment excessive force claim; instead, the force must be repugnant to the conscience of mankind." *Stockton*, 44 F.4th at 619. Therefore, to survive summary judgment, Mr. Williams "must present evidence supporting 'a reliable inference of wantonness in the infliction of pain.'" *Id.* (citing *Whitley*, 475 U.S. at 322).

**B. Eighth Amendment Claim Against Sgt. Holcomb**

There is no dispute that Sgt. Holcomb attempted to close Mr. Williams's cuff port on his arm and deployed the chemical agent into Mr. Williams' cell.[4] Sgt. Holcomb argues that this force was necessary because Mr. Williams "was completely unwilling to obey orders and pull his arm into his cell." Dkt. 114 at 6–7. Mr. Williams responds that he was confined to his cell "presenting no danger

---

[4] Mr. Williams argues that he was not allowed to first speak to a zone supervisor before force was used, in violation of IDOC policy. Dkt. 121 at 9. He also argues that a Quick Response Team was not activated, that Sgt. Holcomb acted as a "one man army," and that there is no evidence that Sgt. Holcomb is certified to use the equipment he did here, in violation of IDOC policy. *Id.* at 14. These arguments do not affect the analysis because "Section 1983 protects against 'constitutional violations, not violations of . . . departmental regulation . . . and practices[.]'" *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)).

9

to any other person", was "behaving in a non-threatening manner," and was not given any orders and did not refuse any orders. Dkt. 121 at 1, 12; dkt. 120 at 2¶8. He also notes that he was not found guilty of refusing any orders related to the incident and was not sanctioned. *Id.* at 2.

The Seventh Circuit has held that "the use of mace is appropriate when reasonably necessary to subdue recalcitrant prisoners." *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010). When assessing whether force is necessary, the Court considers "the threat to the safety of the officers and the threat to the maintenance of good order and discipline in the institution." *Id.* Here, the video shows that most of the cuff ports on Mr. Williams's unit were left open, so a reasonable jury could conclude that an open cuff port alone was not a threat to safety or order. Dkt. 116. While Mr. Williams was able to stick his arm through his cuff port and spray a liquid across the room from it, Sgt. Holcomb never argues that that event played any part in his decision to use OC spray. *See* dkt. 114 at 6–7. Instead, he argues only that the spray was required because Mr. Williams refused to "obey orders and pull his arm into his cell." *Id.* at 7. But the designated evidence reveals a material dispute of fact about whether the spray was required to get Mr. Williams to pull his arm back into his cell. Mr. Williams testified that he was never told to move his arm and "did not refuse any orders," dkt. 120 ¶¶ 7–8, and the video—since it has no audio—does not contradict that evidence. Moreover, Mr. Williams has designated the affidavit of another inmate who was in the hallway of the unit when the event occurred and says that "Sgt. Holcomb gave Offender Williams no orders before he sprayed." Dkt. 119-1 at 3.

10

As to the amount of force used, it's disputed how many times Sgt. Holcomb administered OC spray—Mr. Williams testified five times and the video appears to show at least two. But if a reasonable jury credits Mr. Williams's testimony that he was not warned or ordered to return his arm to his cell, then the jury could find that any use of OC spray was excessive. *Lewis v. Downey*, 581 F.3d 467, 479 (7th Cir. 2009) (force "including mace and tear gas . . . should generally follow adequate warnings"); *see Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004) (force "without penological justification" is excessive).

There are also material disputed facts about whether Sgt. Holcomb's attempt to close the cuff port before using the spray gave Mr. Williams a chance to remove his arm before the OC spray was deployed. Mr. Williams attests that Sgt. Holcomb "closed [his] arm in the cuff port, dkt. 120 at 2 ¶8, and argues that the video shows that Sgt. Holcomb "applying pressure on [his] arm, preventing [him] from moving his arm," dkt. 121 at 3. And the video shows that Sgt. Holcomb abruptly tried to close the cuff port with significant force and maintained some level of force consistently up through at least the first use of OC spray. Dkt. 116 (approx. timestamp 7:20). A reasonable jury could therefore find that Sgt. Holcomb did not give Mr. Williams a chance to comply before using significant force.

Finally, Mr. Williams designated evidence of injury from the OC spray, attesting that he "could not breathe" and his "whole body was burning." Dkt. 120, ¶ 8; *see Santiago*, 599 F.3d at 757. Thus, summary judgment must be denied on the Eighth Amendment excessive force claim against Sgt. Holcomb.

11

*See Lewis*, 581 F.3d at 478 ("Looking at the sequence of events as alleged by Lewis, we find several facts troubling: the absence of any agitation or threat from Lewis; the short passage of time before Shreffler's order and the taser shot; Shreffler's single, unrepeated order; and the dearth of warnings regarding the consequences of Lewis's failure to comply.").

### C. Eighth Amendment Claim against Lt. Nicholson

Mr. Williams alleges that Lt. Nicholson is liable for his injuries because he was the zone supervisor on the housing unit. Dkt. 121 at 8. The defendants argue that Mr. Williams' Eighth Amendment claim against Lt. Nicholson fails because "there was no excessive force by Defendant Holcomb." Dkt. 114 at 7.

It is undisputed that Lt. Nicholson was not present during the incident, and the summary judgment record indicates he only responded to Mr. Williams' request for interview and grievance. Dkt. 121 at 8 (plaintiff admits Nicholson was not present). But Lt. Nicholson cannot be vicariously liable for Sgt. Holcomb's actions. *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018) ("Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failure to ensure that subordinates carry out their tasks correctly."). Instead, "[i]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017).

To the extent that Mr. Williams argues that Lt. Nicholson participated in the use of force because he authorized the use of OC spray, he has not designated evidence to support his contention that "[i]t could easily be perceived that

12

Defendant Nicholson gave Defendant Holcomb the 'greenlight' to carry out an attack on Williams," by authorizing, as the zone supervisor, the use of the OC spray or physical force. Dkt. 121 at 6. No reasonable jury could conclude that Lt. Holcomb authorized the use of force based solely on his job title. And there is no evidence in the record to support that Lt. Nicholson directed Sgt. Holcomb to take any actions against Mr. Williams.

Finally, to the extent that Mr. Williams is arguing that Lt. Nicholson failed to intervene in Sgt. Holcomb's use of force, that argument fails for the same reason—there's no evidence that Lt. Nicholson was involved with or aware of Sgt. Holcomb's actions. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (officers must have "a realistic opportunity to step forward and prevent" a violation to be liable for failure to intervene).

Lt. Nicholson is therefore entitled to summary judgment.

### D. First Amendment Retaliation against Sgt. Holcomb

Mr. Williams argues that Sgt. Holcomb's actions were in retaliation for a prior grievance, #108635, reporting that custody staff on the unit failed to properly conduct security checks. Dkt. 121 at 5-6.

"To prevail on a First Amendment retaliation claim, a plaintiff must establish three elements. First, he must show he engaged in protected First Amendment activity. Second, he must show an adverse action was taken against him. Third, he must show his protected conduct was at least a motivating factor of the adverse action." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). At

13

summary judgment, the burden of proof on whether the protected activity was a motivating factor for the alleged retaliation "is split between the parties." *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Initially, a plaintiff "must produce evidence that his speech was at least a motivating factor . . . of the [] decision to take retaliatory action against him." *Id.* The burden then shifts to the defendant "to rebut the causal inference raised by the plaintiff's evidence." *Id.* If the defendant rebuts the causal inference by demonstrating a legitimate reason for the alleged retaliatory action, "the plaintiff must present evidence that the defendant's proffered explanation is pretextual." *Lalvani v. Cook Cnty., Ill.*, 269 F.3d 785, 790 (7th Cir. 2001).

The defendants do not dispute that Mr. Williams's grievance is a protected First Amendment activity or that being sprayed with a chemical agent is an adverse action. Dkt. 114 at 5-6. The defendants argue that Mr. Williams's claim "fails on the third element, as he cannot present any admissible evidence to support his claim that Defendant Holcomb's use of OC spray was motivated by Mr. Williams" prior grievance. *Id.*

Mr. Williams argues that retaliation can be inferred from the suspicious timing between Lt. Nicholson speaking with him about the grievance and the OC spray incident the next day, coupled with the comments that one of the officers made to him after Sgt. Holcomb sprayed him: "[you] ain't talking to L.T" and "file a grievance." Dkt. 121 at 6; *see* dkt. 120 at ¶ 8 (Williams Decl.). He argues these comments "are a direct correlation to connect the grievance

14

108635 to the motivation behind Defendant Holcomb's action." Dkt. 121 at 6.[5]

"The 'motivating factor' amounts to a causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). A plaintiff may meet their burden on this issue by offering "[c]ircumstantial evidence [including] suspicious timing, ambiguous statements, behavior, or comments directed at other[s] ... in the protected group." *Id.*

Viewing the evidence in the light most favorable to Mr. Williams and drawing reasonable inferences in his favor, a jury could infer from the close timing between the incident and the grievance discussion with Lt. Nicholson, and the comments made after he was sprayed, that one of the three officers standing outside his cell knew about the grievance. But that inference doesn't support the further inference that the grievance motivated Sgt. Holcomb's actions. Specifically, Mr. Williams doesn't designate any evidence suggesting that Sgt. Holcomb is the person who made the comments. While he offers a reason for that—he was blinded by OC spray—there's no evidence from which jury could connect these statements to Sgt. Holcomb. "[I]nferences supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007); *Stagman v. Ryan*, 176 F.3d 986, 999-1000 (7th Cir. 1999) ("Allegedly protected speech

---

[5] To the extent that Mr. Williams contends that Lt. Nicholson "basically gave Williams a clear warning, telling Williams to be careful and wished him luck" and that "Defendant's Nicholson's warning should be perceived as a direct threat to Williams," dkt. 121 at 5, those statements allegedly made by Lt. Nicholson do not relate to Sgt. Holcomb and regardless are inadmissible hearsay as to that claim. *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016) (inadmissible hearsay does not support denying summary judgment).

15

cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech.").

Accordingly, no reasonable fact-finder could conclude that Mr. Williams can meet the third element of his prima facie case on a retaliation claim. Sgt. Holcomb is entitled to summary judgment on this First Amendment retaliation claim.

### IV. Conclusion

For the reasons explained above, the motion for summary judgment is **DENIED** with respect to the excessive force claim against Sgt. Holcomb and otherwise **GRANTED**. Dkt. [113].

The **clerk is directed** to remove Lt. Nicholson from the docket.

The Court *sua sponte* reconsiders its previous denial of Mr. Williams's motion for counsel, dkt. 97; dkt. 109.  Mr. Williams **shall have through April 14, 2023** to object to the recruitment of counsel on his behalf for the remaining proceedings in this case.

**SO ORDERED.**

Date: 3/30/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

SHAWN WILLIAMS
178128
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Brandyn Lee Arnold
INDIANA ATTORNEY GENERAL
brandyn.arnold@atg.in.gov